I'm not going to repeat it. I do want to pick up on this issue, a couple of different issues that Mr. Olson raised in the last case, the first one being, you know, we shouldn't be rewarded, he says, by somehow having broader review now that this case has to be treated as a petition for review, because when it was a habeas, the only issue that we raised was ineffective assistance of counsel and whether the decision should be reissued. Well, obviously, the reason we framed the habeas like that is because that's the way we had to frame the habeas, because in this circuit, in this circuit, until the passage of the Real ID Act, in habeas proceedings, we could only raise those issues that we couldn't have raised directly on a direct appeal. And under Volkova, then, the only issue that we could raise in our habeas was whether or not the board's decision can be enforced or whether it cannot be enforced until it's reissued and we're allowed some additional period of time in which to appeal. So we framed our case the way we did because it was being treated at that time as a habeas. But now, obviously, the Court's being ordered to treat it as a timely petition for review. And it doesn't make any sense to me to say that, well, we're going to treat it as a timely petition for review, but we're going to limit the scope of our review to that that you would have had in habeas. Again, that's not treating it as a petition for review. That's treating it as a habeas appeal. Now, on this issue about the motion to reopen, there's some history here. At the time that we filed this habeas, yes, we were filing this pursuant to Derringer, and Mr. Olson knows full well that, you know, we'd filed probably at least a dozen of these things And in almost all those cases up until this one or there are a couple, you know, at some point the government changed its position. But up until the government changed its position, they weren't requiring us to file motions to reopen. They agreed with us, I guess, that Derringer didn't require it and they were entering into stipulations. We had, you know, at least a half a dozen stipulations to grant habeas petitions where we didn't file a motion to reopen, pursuant to Derringer. And the reason we weren't filing a motion to reopen is because Derringer told us quite explicitly that we didn't have to. Derringer says, quote, a claim of ineffective assistance of counsel occurring after the BIA has ruled may be raised with the BIA by filing a motion to reopen. However, failure to do so does not bar this Court from hearing the claim. And pursuant to that, we were filing habeas petitions and the government was oftentimes stipulating to the grant of a habeas petition without us filing a motion to reopen. And then they changed their position. And then they started saying, well, you need to file a motion to reopen. And our position is that no, a motion to reopen was inappropriate because the ineffective assistance of counsel that we're talking about here, it didn't occur during the course of the administrative proceedings. It occurred in Federal court. When somebody fails to file a petition for review and there's ineffective assistance of counsel, that's not the board's problem. Our position has been that when there's ineffective assistance of counsel occurring in the Federal court system, it's the Federal court's responsibility to deal with that. And when I say that, I include the U.S. Attorney's Office because they're part of this Federal court system. And our position has been it's not right for the U.S. Attorney's Office to slough off its responsibilities and try to put the burden on the Board of Immigration Appeals. And on this issue about whether the board could even provide us relief, the board has spoken on this question. When the government changed its position, we started filing motions to reopen in the Yates case. And in the Yates case, the board said, quote, that it can provide no remedy for any alleged ineffective assistance of counsel that arose after the board rendered its decision. The board doesn't think that it has the authority to simply reissue decisions because somebody was deprived of appellate review when the ineffective assistance of counsel didn't occur in the administrative proceedings. It occurred after the board had rendered its decision. It occurred in the Ninth Circuit. And in Yates, the board says, this is something the Ninth Circuit has to deal with. Take it up with them. And that's perfectly consistent with their motion to reopen regulations. If you look at 1003.2c, which is the provision that governs motions to reopen, it says to get a motion to reopen granted, you have to set forth new facts to be proven at a hearing to be conducted if the motion is granted. Now, this is the – we're not seeking a new hearing. When we ask the board to simply reissue a decision so that we can have another period of time in which to appeal, we're simply asking them to do that – exactly that thing, an administerial act, reissue the decision so that we have an additional 30 days to appeal. It's not like the motion to reopen that we filed in the previous case, the Gurmeet Singh case, where we're saying that this individual is eligible for adjustment of status, so you have to reopen the case so that we can have a hearing on the adjustment of status. That's a proper motion to reopen. But to go back to the board and say we don't actually want a hearing, we actually don't want to present any new evidence to you in the administrative proceeding, we just want you to reissue your decision so that we can appeal to the Ninth Circuit, that's not a proper motion to reopen. And the board agrees with that. As they said in Yotes, it's not a proper motion to reopen. Take it up with the Ninth Circuit. So for the government to sit here and tell us, well, we should go back and file a motion to reopen, well, we just did that. And they told us, take it up with the board. And it's patently unfair in this case, you know, some two years or whatever, after we filed our habeas petition, to say, well, now you should go back and take it up with the board, make a motion to reopen. Well, it's too late to do that. We filed a habeas. At the time we filed it, it was the proper thing to do. The law has changed. And we need a remedy. We need some forum to hear our claim about ineffective assistance of counsel. Kennedy. Is that the thrust of your argument, that we take the habeas record, then, or? Well, I'm wondering, if the board doesn't entertain these claims at all, how do we get a record? Yeah. I don't have a clear solution to this. But it seems to me that the best solution, the one that's most in keeping with the plain language of the Real ID Act, is to treat it as a timely filed petition for review on the merits of the underlying removal order. I understand that it gives us what we wanted in the habeas, but it's what Congress seems to have ordered. And as I said earlier, it makes sense, because although this small group of people is going to get this little benefit, they're going to get review of the removal orders, other aliens of the Second, Third, and Tenth Circuit, they're being, those cases are being streamlined so that they're not going to get two tiers of review. So it seems to be consistent with the purpose of the Real ID Act, and it's certainly consistent with the plain language, which says that it has to be treated as a petition for review, and that the 30-day limit on filing petitions for review doesn't apply. Because the 30-day limit doesn't apply, it seems to me that we should be able to get review of the underlying removal order. Okay. I have some time for rebuttal. Mr. Olson. Thanks. Good morning, Your Honors. Edward Olson again from the U.S. Attorney's Office, on behalf of the Respondents. I'd first like to clarify the suggestion that the government has changed its approach to these cases. You know, the government, as in every case, looks at the case on a case-by-case basis. And if it's clear from the record, and it's undisputed, that the government has changed its approach to these cases, that the BIA should reissue its decision, on occasion, the government will say, the facts are clear. There was some sort of error below. The best approach to this case, and spare everybody a lot of litigation, is to ask the BIA to reissue its decision. But that's not to say that we've changed our approach and insisted suddenly on the alien filing a motion to reopen. Our approach all along is that generally, if you're asking the BIA to reissue its decision, you should ask the BIA to reissue its decision. If the BIA says no, you can come to the Ninth Circuit. Your recourse is not to come to district court and file a habeas petition. So I just wanted to clarify that. Secondly, under Real ID, hasn't that act done that? I missed the last part of your question, Your Honor. Well, hasn't the Real ID done what you've just described? You say they shouldn't have gone to district court. They should have come here. Right. The Real ID Act says, imagine the district court never had jurisdiction, move this stuff over its all-one stream. Doesn't that, in effect, do that? Yes. I think the Real ID Act reinforces the approach that the government has taken all along, that all review of removal orders should be in the Ninth Circuit as opposed to the district court. I take it your argument, tell me if I'm, if I've got this captured, that it would be one thing if the, if counsel had moved the BIA either to reissue its order or to reopen, and that had been denied for whatever reason, and then they had come here. Correct. This is an instance where they didn't even do that. They didn't even do that, but it's because the Petitioner didn't ask the BIA to do that. So, you know, the proper procedure would have been to ask the BIA to reissue its decision. If the BIA said no, come to the Ninth Circuit. That's the way the Real ID Act says it should, it should happen. Maybe, maybe I'm missing something. What he was looking for was to get the whole record, the administrative record, in front of this court. Right? That's what he wanted to do. So it's here now. Is that right? The record from the district court is here now, yes. No, the record from the, this is now a petition for review. Correct. So the record from the BIA is here. Right. And we're reviewing that. True. If, if, Your Honor, if your review is confined to the BIA's record, which should be under the Real ID Act, there's no evidence of ineffective assistance of counsel, and I think that's the quandary that the Petitioner is in, that if it's, if this case is construed as a PFR, Petition for Review, you're confined to the BIA's administrative record, and there's no evidence of ineffective assistance of counsel at the BIA level. So I think that's why the Petitioner is seeking review, not of the ineffective assistance of counsel claim, the argument that he's been raising all along, but the merits of his underlying removal order, which is an entirely new claim. Maybe I'm crazy. He wants the review of the removal order. Correct. You tell me we're stuck with the review of the removal order. You both agreed that our job is to review the removal order. That's what he wants? That's what you say we're stuck with, right? So what's the fight about? Yeah. Our position is that under the Real ID Act, this case should be reviewed as a PFR of the removal order. I agree. And I agree that the appeal should be construed under the Real ID Act as timely. Our difference, though, is the claim that this Court, the only claim that has been raised in this proceeding is ineffective assistance of counsel. The Real ID Act should not give him the opportunity, the windfall, to raise an entirely new claim, which is, essentially, he's raising the ineffective assistance of counsel argument, and if he succeeds, then he'll be able to attack the underlying removal order. If you buy the Petitioner's position, he'll be able to review the underlying removal order without having to establish ineffective assistance of counsel. Our position is the ineffective assistance of counsel claim is the only argument that's been presented to the district court and to this Court, and now to suddenly give him the opportunity to file a new brief. Oh, wait a minute. The last case you argued that we were stuck with the administrative record and we couldn't go in to what the district court said. This case you're saying, oh, no, you're stuck with the district court record and you can't go into the BIA record. Respectfully, Your Honor, that is not my position. My position is you're stuck with the BIA's record, and there's no evidence of ineffective assistance of counsel at the BIA level. What I'm saying is what the panel is stuck with and what I'm stuck with is the only claim, not the record, the claim, the argument all along has been ineffective assistance of counsel. My only proposal is that he's bound by that. That's the claim he's raised all along. He shouldn't be given the opportunity to file a new brief raising an entirely new argument. My position in both cases is consistent, though, in saying that this Court is confined to the administrative record of the BIA, not the district court. If I can just say briefly something about the 28J letters that Mr. Job has presented. So he's presented some recent decisions by the BIA which, in his view, say that the BIA is powerless to reissue its decision. And if you look carefully at the BIA decisions that he's attached, that's not what the BIA is saying. What the BIA is saying is you filed this motion to reopen, alleging some ineffective assistance of counsel by your former attorney. But now that we look at it, the alleged ineffective assistance of counsel occurred after you filed a petition for review with the Ninth Circuit. In those cases, the alien had filed a petition for review with this Court and then for one reason or another didn't file a brief. And so the Ninth Circuit dismissed the case for failure to prosecute. That, understandably, the BIA is going to say the alleged ineffective assistance of counsel occurred at the Ninth Circuit. You didn't file a Ninth Circuit brief. That, understandably, the BIA is going to say we can't really do anything about this. This case is not that case. This case, the BIA issued its decision. There's some allegation that the attorney didn't get it or got it and didn't let the alien know. The BIA is in the position to do something about that. And the Ninth Circuit has said expressly in an opinion called LADA, and let me give you the site. It's LADA, the INS, and it's 204, Fed 3rd, 1241. The Ninth Circuit has said the BIA has the authority to address that situation. That's the express holding of that case is that you could have ultimately the Ninth Circuit got around it. But the Ninth Circuit said you should have presented this claim to the BIA because the BIA could reissue its decision in exactly these circumstances. So the 28J letter doesn't really address the facts of this case. And in any event, if the alien is upset with those decisions, the alien can appeal to the Ninth Circuit. The remedy isn't to come into district court and bring a habeas petition. Finally, let me just briefly run through my arguments about what happened in this case. You know, in this case, the former attorney allegedly moved from one suite to another suite within the same building, didn't get a copy. The building where the INS is, isn't it? Apparently so. I haven't been in the building, actually. 325 Sandstone or something like that? Yes. And the attorney discovered the fact that the BIA had issued its decision months ago and said to the BIA, I didn't get the decision. Please reissue it. The BIA said no. Our position is, you should have appealed that to the Ninth Circuit, because the Ninth Circuit was in the position to say, I don't know whose fault it was, but it may not have been the alien's fault. So, BIA, you should have reissued your decision. Didn't do that. The second option would have been to ask the BIA, once the alien filed or retained Bob Jobe, would be to ask the BIA to reissue its decision, because my former attorney was ineffective. It didn't do that. Instead, he filed a habeas petition, and then in the habeas petition, files an affidavit, but didn't notify former attorney of the alleged ineffective assistance, essentially asking the district court to find some other attorney ineffective, which is obviously a very serious charge, based on an affidavit. It's putting the district court in a very difficult situation to make a very serious determination without any evidence aside from an affidavit. So just to sum up, but I think the approach in this case should be to review the case as a PFR and deny the PFR because the circuit is very clear that before we review an ineffective assistance, a counsel claim, you have to file a motion to reopen with the BIA first. I suppose, you know, when you say that it puts the district court in a difficult position when you have just an affidavit on one side, of course the district court's in a position to have an attorney come in and explain. That's true, and the district court conceivably could have done that, but I think the district court also reasonably imposes the initial obligation, the burden of proof on the petitioner to present the district court with some evidence on which the district court can make that determination. Does Lozada really fit with this kind of fact situation? I think it does, Your Honor, because this is not somebody who ignored doing something, failed to do something, deceived the client about doing something. Apparently, he moved, and apparently his failure was to not notify the immigration service or its successor of his change of address, which was within the same building. Is that bar complaint stuff? Is that something that you have to notify the board? Go ahead. I think it's bar complaint stuff. If you're alleging ineffective assistance, the allegation is that the attorney should have notified the BIA, you know, that I've moved, and so please send future correspondents to my new suite. I think that's, you know, that's an ineffective assistance of counsel claim because it can lead, if it occurred, to this kind of situation where the alien is allegedly deprived of an opportunity to go to the Ninth Circuit. So I think it's bar stuff if you fail to notify the BIA of a change of address, and as a result, you don't get the order and you can't notify your client, and your client can't go to the Ninth Circuit. And I think the BIA could have made determinations such as, well, when did you move? And did you file a change of address? And if so, when did you do it? Did you notify the post office that you had changed address? I think he alleges that he did. He alleges that he did. In his motion, the former attorney's motion to the BIA asking the BIA, he says that he notified the post office. And then was it even ineffective assistance of counsel because the BIA issued its decision before he moved? So he could have conceivably said, well, I didn't file a notice of change of address, but I moved before or I moved after the decision was issued, so you shouldn't certainly find me ineffective because it's just a quirk in the timing of what happened. It's nobody's fault. But I think that's why he had the opportunity, if it's nobody's fault, to appeal the BIA's decision denying his motion to reissue his decision. He could appeal to this Court and the Court could have done something. The decision came down before he moved? The decision came down on November 21st, and I think he says, and it's not in an affidavit, it's not in a declaration. He says in some submission to the BIA that he moved on November 23rd. Oh, I see. So the notice came later maybe, but the decision came later. Okay. Thank you, Mr. Olson. Rebuttal. I'd like to talk briefly about LATA. LATA was a situation where an alien filed a timely petition for review, but then didn't file a brief with the Ninth Circuit, and the case was dismissed by the Ninth Circuit. And the government is suggesting that pursuant to LATA, in a case like that, it would be appropriate to file a motion to reopen at the board. That just seems crazy to me. The ineffective assistance of counsel occurred before the Ninth Circuit. Obviously what you would want to do in a case like that is make a motion to reinstate in the Ninth Circuit. Well, I think what counsel was doing was just explaining that LATA isn't this case, and he was distinguishing it because he thought that you were relying on LATA's statement to prove that they wouldn't entertain your case. No, I'm not relying on LATA at all. I think insofar as LATA is relevant, Judge O'Scanlan's decision does suggest that in a case like that, if somebody fails to file a brief in the Ninth Circuit, Judge O'Scanlan suggests that you could go back to the board and make a motion to reopen there. But in point of fact, in LATA, the Ninth Circuit reviewed the ineffective assistance of counsel claim there, even though the alien didn't file a motion to reopen. So actually LATA supports our position. But it seems to me that the thrust of this case, the ultimate question in this case, is not whether we're going to treat this case as a petition for review. We agree on that. Not whether we're going to treat it as timely. We agree on that. The real question is what's the scope of the court's review? And it seems to me the government's saying, well, although we're going to treat this as a petition for review, you're limited to the issues that you could have and you did raise in habeas.  And so the question is, well, if we're going to treat this as a petition for review, you really have to treat it as a petition for review, a timely one. And we shouldn't be limited to the issues that we could have raised and we did raise in habeas corpus. Now that it's a petition for review, it's a different animal. And you have to allow us briefing, to brief the issues that we can raise in a petition for review that we couldn't have raised in habeas. And the problem I think you may be facing is, and I don't know what the answer to it is, but you said you had to raise this in habeas. Well, that's because there was a split and you had to do some things by petition for review and some things by habeas. But you forewent that opportunity. You didn't do the petition for review route. And they're saying that part of it's expired and you went into habeas on the ineffective assistance of counsel and that is preserved. I mean, I think that's what they're saying. Right. But now under the Real ID Act, Congress is saying that that habeas has to be treated as a timely filed petition for review. Right. But it doesn't have to be treated as the first petition for review that wasn't filed, is what they're saying. That's the question. Yeah. And I don't know a really good way to resolve that except, like I say, by resorting to those basic principles of statutory construction that would give the benefit of the doubt and resolve any ambiguities in our favor. But you're saying that, well, the reason we're so confined in habeas was that we had to be, and that's right, all you could bring in habeas was the ineffective assistance thing. But that didn't mean you didn't have any way of bringing it. You had a way to bring the other matter, the appeal from the denial of asylum, the petition for review denial of asylum, and that opportunity was let slip. Yeah. Actually, I don't agree with that, Your Honor, because the reason that there was no And although he made a motion to reopen, the former counsel made a motion to reopen at the board, the board denied that motion, essentially saying that what you're describing here is ineffective assistance of counsel, and you haven't failed, you haven't complied with a matter of LOSADA. Essentially, you screwed up, is what they told the former attorney. And so based on that, based on the fact that the former attorney essentially admitted to the board that he'd failed to file a change of address with the board, and based on the board's characterization of the case as really one involving ineffective assistance of counsel, we brought a habeas, rather than appeal the denial of former counsel's motion to reopen, because in our view, the board was right in that insofar as Mr. Goswami failed to change his address with the board, he screwed up. And his screw-up eventually caused our client to lose an opportunity for direct appeal here in this court. So in our view, certainly habeas was proper at the time that we filed it. Yeah. No, I don't disagree with that. And it is the key, certainly the key to reopening the whole business is to establish your ineffective assistance of counsel claim. Thank you, Your Honor. Okay. Thank you very much. The case just argued will be ordered and submitted. And the Court's going to take about a 10-minute recess, and we'll come back and complete the remainder of the calendar. When we come back, we'll start with Bush and Moran. All rise. This court is going to recess for 10 minutes. Sure. Thank you. Thank you. Thank you. Thank you. Thank you. You've got Rainwater as well. I've got him next. Oh, yeah. Which side do you want? You want this side? No, I was over here. I asked them, and they said there was no. Yeah. They didn't have the government side or the opponents versus respondents. It was funny. I didn't know where this guy sat. Here he was. Then I was behind him. He had a different claim with the man in the wheelchair. Yeah. All right. Well, you were pretty busy there. Yeah. So you're a pretty good man.   You were pretty good. Yeah. So, you went to the manual, which was a very long brief, so you know what? I don't have to tell you. You know what? I don't have to tell you. Somebody told me first. I had to let you know. What do you mean? What do you mean? That was your point? What did you mean? What did you mean? What the whole thing was, I was running out of money, and the decision I got was to leave that office. So I finished that up, even though it wasn't there for a while. Yeah. And I was like, you know what? Go and get ready for this. Go to the new seat. Right? You won't be worried about your fall. Just do your thing. Let's go. I'll be great. Let's go. I'm glad you can do that. You've got our support. I got it. Right. Go ahead and use this. It's good to know. I, oh, you mean the new citations? Yeah. Oh, yeah. That was just – I just sent you that email, because I didn't – Yeah. It was – I missed it because it was too late and I realized. Yeah, they're kind of blowing me out of the water. Well, maybe they do. Maybe they don't. Yeah, I don't know. But it was like – actually, it's funny. I called our appellate guy and said, what's the law on this? And he said, you should be able to research the same case as that. It's still good. It's not a change in the law. So then I did. I was hoping he would say – Yeah. I just – Yeah. Yeah.    Yeah. Yeah. Yeah. Yeah. Yeah. Once in a while I do it. If I don't recognize the document, I get something sent to me. Yeah. Yeah. Yeah. Oh, yeah. Oh, right. Right. Right. Right. They're running behind... It's barely comprehensible. Oh, yeah. That real idea. I've got, I have an idea. Why didn't... Why didn't... Why didn't... I don't know. And I did it. And now it's really my idea. Yeah. So it's nice. But I thought, you know, an idea has to get back to somebody. Yeah. Yeah. I don't know. I've done it one or two little ways, you know, like... And what I do, I've gone in and tried a couple of those 13.6s just to be able to find who I am. And I go to the immigration people and they tell me all the laws. Oh, what happened to... Who's the guy? Bill Sims? Did he get... Did he get sent to Iraq? Oh, oh. No, he's in the army. He was... The last I heard, he was in Fort Irwin. I don't believe he's in Iraq. I mean, you know, he's in the Jaguar, so he's still relatively safe. Oh, I thought... What did they name him? No, he... No, he... Oh, my goodness. Oh, my goodness. Oh, my goodness. They had a program going, and I guess the end result was probably going to be... I go to his time and usually the incentive was like $25,000. Oh. I mean, $25,000 is nice, but... Unless you've really got something else you want to do. But then I think what he did was he took that money and he made me a full-time military. Oh. Which, I can't say for the rest of my life, but he was going to be in the agency anyway. Oh, I just... I just... I don't know. I don't know. Yeah, because... He seemed like such a presentable guy in the middle of a martial and then he had that conquestionless marriage and she had nothing good to say about him and he said that he stole his money and that he did a short-term... Oh, did you hear that they were just awful? She said, Oh, Gran, you used your money and... I hear so little gossip. Oh, I heard... I heard so little gossip. She had a tremendous amount of debt which I had disclosed to her. Oh, I heard he had debt he hadn't disclosed to her. Oh... Oh... You just need to run your prospective spouse's credit rating, I think. Or not combine your assets or something. No. I did not. I didn't. He was a different guy. I didn't know him. I did see him do something once where it was like urging him for doing something I see you shouldn't have done. Yes. You should have done this. You. You should have had a reputation for being reasonable. Like God. Oh. Just flat out. Oh. I think the other universal people need to invest in you because they're not        Ours will show up. Ours will show up. Ours will show up. Ours will show up. Ours will show up. Ours will show up. Ours will show up. Side by side. OK. You remember this earlier. Uh-oh. I didn't. I forgot you liked this music. This is a birthday! I know. I'm not surprised.
judges: Canby, Hawkins, Duffy